# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

BEVERLY FONDA WOODWARD,

        Plaintiff,

v.                               Case No. 2:22-cv-639-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

_____/

## OPINION AND ORDER[2]

## I.   Status

Beverly Fonda Woodward ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB") for the period from February 10, 2011 through November 30, 2014.[3] Plaintiff's alleged inability to work is the result of deep vein thrombosis, chronic pain, depression, anxiety, panic attacks,

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed January 13, 2023; Reference Order (Doc. No. 16), entered January 17, 2023.

[3]    As explained later, the SSA ultimately found Plaintiff disabled as of December 1, 2014, so at issue here is only a limited time period between when Plaintiff alleges she became disabled and when the SSA recognized she became disabled.

bursitis in her hip and lower back on the right side, sciatica pain, headaches, and neck pain. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed January 13, 2023, at 109, 119, 251.[4]

On January 19, 2012, Plaintiff protectively filed the DIB application, alleging a disability onset date of February 10, 2011. Tr. at 186-92.[5] The application was denied initially, Tr. at 109-17, 118, 132, 133-37, and upon reconsideration, Tr. at 119-30, 131, 139, 140-44.

On November 18, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 60-107. At the time of the hearing, Plaintiff was fifty-four (54) years old. Tr. at 64. The ALJ issued a decision on January 22, 2015 finding Plaintiff not disabled through the date of the decision. Tr. at 14-31. Plaintiff requested review by the Appeals Council and submitted briefs and additional medical evidence in support. Tr. at 5-6 (Appeals Council exhibit list and order), 9-10 (request for review and letter), 288-91, 292-93

---

[4]     As explained herein, Plaintiff's claim has a protracted procedural history. Likely because of multiple remands, the administrative transcript contains duplicates of many of the administrative findings and filings. These duplicates are not cited in this Opinion and Order; citations are to the first time a document appears. The administrative transcript also contains a 2016 DIB application and related determinations. This application is not at issue here and is not cited.

[5]     The DIB application was actually completed on February 2, 2012. Tr. at 186. The protective filing date is listed elsewhere in the administrative transcript as January 19, 2012. Tr. at 109, 119.

(briefs). On April 25, 2016, the Appeals Council denied review, Tr. at 1-4, making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court on June 24, 2016. Tr. at 966-67. On September 20, 2017, the Court entered an Opinion and Order reversing and remanding the Commissioner's final decision. Tr. at 983-93; see Tr. at 994 (Judgment). On remand, the Appeals Council "sent the case back to an [ALJ]" for further adjudication consistent with the Court's Opinion and Order. Tr. at 999, 999-1003.

On January 9, 2019, another ALJ held a hearing, during which she heard from Plaintiff, who was represented by counsel; a VE; and a medical expert ("ME"). Tr. at 877-964. On March 5, 2019, the ALJ issued a partially-favorable decision finding Plaintiff not disabled prior to December 1, 2014, but disabled as of that date. See Tr. at 851-68.

Thereafter, Plaintiff submitted "exceptions to [the] ALJ['s] decision." Tr. at 1087-89 (exceptions) (capitalization omitted), 843-44 (Appeals Council exhibit list and order). On April 29, 2020, the Appeals Council declined to assume jurisdiction, Tr. at 838-41, making the ALJ's Decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court on June 12, 2020. Complaint (Doc. No. 1), No. 2:20-cv-417-NPM (M.D. Fla.). On September 28, 2021, the Court entered an Opinion and Order reversing and remanding the

Commissioner's final decision. Tr. at 1366-86; see Tr. at 1387 (Judgment). On remand, the Appeals Council "sent the case back to an [ALJ]" for further adjudication consistent with the Court's Opinion and Order. Tr. at 1389, 1389-91.

On April 13, 2022, the ALJ held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a VE.[6] Tr. at 1303-25. On May 4, 2022, the ALJ issued a Decision finding Plaintiff was not disabled at any time from February 10, 2011, the alleged onset date, through November 30, 2014. Tr. at 1269-93. This left "undisturbed" the Administration's prior finding that Plaintiff became disabled on December 1, 2014. Tr. at 1293.

Thereafter, Plaintiff submitted "exceptions" to the ALJ's Decision. Tr. at 1544-47 (exceptions) (capitalization omitted), 1263-64 (Appeals Council exhibit list and order). On August 24, 2022, the Appeals Council declined to assume jurisdiction, Tr. at 1258-61, making the ALJ's Decision the final decision of the Commissioner. On October 11, 2022, Plaintiff commenced the instant action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

---

[6]     This hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances caused by the earlier stages of the COVID-19 pandemic. Tr. at 1306, 1482-97.

Plaintiff on appeal raises as issues: 1) "[w]hether the ALJ erred by failing to evaluate the opinion evidence consistent with the regulations, SSA policy, and Eleventh Circuit precedent in finding that Plaintiff could perform the significant standing/walking requirements of light work during the period the ALJ evaluated"; and 2) "[w]hether, relatedly, the ALJ erred by rejecting the evidence of Plaintiff's pain and other symptoms without performing a proper credibility analysis under 20 C.F.R. § 404.1529." Plaintiff's Brief – Social Security (Doc. No. 18; "Pl.'s Br."), filed March 14, 2023, at 1 (emphasis omitted). On May 12, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues. Then, as permitted, Plaintiff on June 13, 2023 filed a Reply Brief (Doc. No. 20; "Reply").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the medical opinion evidence. On remand, reevaluation of this evidence may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on that issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d

882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 1272-93. At step one, the ALJ determined Plaintiff "did not engage in substantial

---

[7]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

gainful activity during the period from her alleged onset date of February 10, 2011, through November 30, 2014." Tr. at 1272 (emphasis and citation omitted). At step two, the ALJ found that "[f]rom February 10, 2011 to November 30, 2014, [Plaintiff] had the following severe impairments: cervical radiculopathy and spondylosis; bulging disc at L4-5 with hypertrophic change with some stenosis of the lateral recesses and mild bulging at L3-L4 without significant encroachment; stage 3 chronic kidney disease (CKD); and obesity." Tr. at 1273 (emphasis and citation omitted). At step three, the ALJ ascertained that "[f]rom February 10, 2011, to November 30, 2014, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1277 (emphasis and citation omitted).

The ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [F]rom February 10, 2011, to November 30, 2014, secondary to her combined physical impairments, [Plaintiff could] perform light work as defined in 20 CFR [§] 404.1567(b) with the ability to occasionally lift and/or carry up to 20 pounds and lift and/or carry 10 pounds frequently. [Plaintiff] has no limits for sitting in an eight-hour workday. In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task or leave workstation. She is capable of standing and/or walking for up to six hours in an eight-hour workday. She can perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to

perform no crawling, no squatting, no crouching, and no climbing of ladders, rope, or scaffolds. There are no upper extremity limitations. [Plaintiff] is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work with vibratory tools or equipment. In the course of work, secondary to history of asthma, [Plaintiff] is to avoid concentrated exposure to respiratory irritants such as fumes, odors, smoke, gases, and poor ventilation. [Plaintiff] is to avoid concentrated exposure to extremes of heat, humidity, and cold temperatures. Secondary to her non-severe mental impairments, [Plaintiff] can understand, remember, and carry out detailed, but non-highly complex instructions and tasks. [Plaintiff] can make judgments regarding work-related decisions, complete tasks in a timely manner, and manage routine job stressors. [Plaintiff] is able to maintain a routine work schedule and handle changes in non-highly complex job environments. [Plaintiff] can control [her] emotions in a work environment. [Plaintiff] can respond appropriately to the public, supervisors, coworkers, and work situations. [Plaintiff] can complete detailed instructions consistent with these related mental functions.

Tr. at 1279 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[f]rom February 10, 2011, to November 30, 2014, [Plaintiff] was capable of performing past relevant work as a Receptionist." Tr. at 1290 (emphasis, italics, and citation omitted). The ALJ then made alterative findings at the fifth and final step of the sequential inquiry. Tr. at 1291-92. After considering Plaintiff's age ("50 years old . . . one the alleged onset date and . . . 54 years old on November 30, 2014"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony

from the 2019 hearing and found that "there were other jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 1291 (citation omitted), such as "Cashier," "Routing Clerk," and "Silverware Wrapper," Tr. at 1292 (italics omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from February 10, 2011, the alleged onset date, through November 30, 2014." Tr. at 1293 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court

to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the treating source opinion of Fred Liebowitz, M.D. and the 2019 hearing ME opinion of Alexander Todorov, M.D. Pl.'s Br. at 8-21.

"Medical opinions[8] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists,

---

[8]    On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her claim before that date, the undersigned cites the older Rules and Regulations (that are applicable to the date the claim was filed).

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[9]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin.,

---

[9]     For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any

other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the opinions at issue are as follows. First, treating pain management specialist Dr. Liebowitz opined on July 11, 2012 that Plaintiff had "progressively worse radicular neck pain, with sensory and motor deficits." Tr. at 423. Plaintiff had "[c]ervical [r]adiculitis" on the left side, as well as "deep vein thrombosis of the left lower extremity" and was being treated with Coumadin. Tr. at 422, 423. As a result, Plaintiff experienced decreased grip strength (3/5) and ability to perform fine manipulation, as well as sensory loss and motor loss. Tr. at 423. Dr. Liebowitz opined again on November 13, 2014, this time providing more work-related limitations and affirming they existed as of the onset date of February 10, 2011. Tr. at 789-90. He indicated that Plaintiff could not stand/walk even an hour at a time but could stand/walk two hours total throughout the day; could sit two hours at a time or four hours total in a

day; could lift occasionally up to ten pounds; could use her hands for repetitive grasping, pushing and pulling, and fine manipulation; and could use her feet for repetitive movements. Tr. at 789-90. Plaintiff could not bend, squat, crawl or climb. Tr. at 790.

At the hearing in January 2019, the ALJ employed a ME, Dr. Todorov, who is a neurologist. See Tr. at 1431-53. Relevant here, Dr. Todorov testified as follows:

> Q So, what would you -- when Dr. Leibowitz at 22F, Page 55 in November 2014 said that -- his medical source statement said that she could only sit for four hours in an eight-hour workday, stand and walk two hours in an eight-hour workday, and lift no more than ten pounds, do his examinations support that in your opinion?
>
> A He has been following the patient on a very regular basis.
>
> Q Uh-huh.
>
> A And his notes are fairly consistent on the complaints, as well as for the physical findings. In terms –
>
> Q Uh-huh.
>
> A -- of the physical findings, you do have some tenderness into the cervical and the lumbar spine.
>
> Q Uh-huh.
>
> A In my opinion he is just a fraction too restrictive. I think that she should be able to do more in terms of sitting, standing and walking.
>
> Q All right. So, what would you opine?

A But we do have the issue of the deep venous thrombosis that was a limiting factor during part of that period.

Q Uh-huh.

A But this was resolved.

Q Okay. What would you opine her functional limitations to be?

A I do not think that she can squat, crawl or climb ladders. I do not –

CLMT: Uh-huh.

ME: -- see restrictions in the use of the upper extremities. She should be, in my opinion, limited to light kind of duties. I think it would be reasonable that she is in a sitting desk type of activity.

BY ADMINISTRATIVE LAW JUDGE: Q Uh-huh. Well, when you say sitting type of activity, are you meaning a sit-down job? Like, for example let's go to standing and walking. What would you opine that she could stand and walk in an eight-hour workday?

A I think that she can stand one hour at a time, three hours in a day, walking I would say half an hour and two hours in a day.

Q Any limits for sitting in your opinion?

A I beg your pardon, Your Honor, I missed the question.

ALJ: Have –

EXAMINATION OF MEDICAL EXPERT BY ATTORNEY: Q It -- she asked if there would be any limitations in sitting, in your opinion.

A No.

. . .

> BY ADMINISTRATIVE LAW JUDGE: Q Do you -- does she need to have elevate her legs at any point in time during the day?
>
> A During the time of the DVT, the deep venous thrombosis, it is always suggested to elevate the leg.
>
> Q Okay.
>
> A Otherwise, no.
>
> ALJ: All right, and that -- when was that resolved? Do you remember what date would -- was it completely resolved?
>
> CLMT: I have to be on medicine forever.
>
> ME: I think it was resolved in 2014.

Tr. at 1437-40.

The ALJ in the Decision discussed in great detail Dr. Liebowitz's notes.

Tr. at 1281-85. When it came time to assign weight to Dr. Liebowitz's opinions, the ALJ wrote as to the 2012 opinion:

> The statement is assigned little weight because it is not supported by or consistent with the doctor's own physical and neurological exams of [Plaintiff], which have been extensively detailed above. All exams, including the one performed on July 11, 2012, noted full and symmetrical strength, tone, and size throughout the upper and lower extremities, and intact and symmetrical sensory in upper and lower extremities. With respect to decreased grip strength and decreased ability to perform fine manipulation, the doctor's exams include no findings with respect to the hands or fingers. Grip strength is not included or mentioned as being tested during exams. Accordingly, these symptoms appear to be based on [Plaintiff's] subjective reports of radiating pain to the hands, as it was noted there is no

> objective MRI nor any other objective evidence such as EMG/NCS testing results to support these findings.

Tr. at 1283 (citation omitted). As for the 2014 opinion, the ALJ wrote in part:

> Little weight is assigned to the opinion because it is not supported by the doctor's own examinations, as extensively detailed from 2011 to 2014. For much of the relevant period, her exams indicate she had a well-coordinated gait; exam of gait and station was normal. Mild to moderate tenderness of the cervical spine and moderate tenderness of the lumbar spine tenderness were noted. Range of motion of the spine was limited on cervical and lumbar testing; however, specifics regarding her actual degree of range were not noted. She had normal motor system, sensory system, and reflexes.
>
> Straight leg raising was positive on the right at 45 degrees. Gait under neurologic was antalgic, mild, which directly contradicts normal gait/stance and well-coordinated gait findings. Beginning November 2012, her exam minimally changed from previous and was identical except for moderate to severe tenderness of the cervical spine and antalgic gait, mild to moderate with ongoing contradictions of normal gait/stance and well-coordinated gait findings. Beginning February 24, 2014, her exam included a new finding of seventh cranial nerve showing moderate left-side weakness and was otherwise unchanged. The undersigned acknowledges [Plaintiff] presented with a myriad of subjective complaints, including weakness, left foot drag, falls, radiation of pain, worsening pain, etc.; however, these complaints were simply not noted objectively on Dr. Liebowitz's exams. Nearly each office visit was documented in this decision, and it bears noting that despite [Plaintiff's] subjective complaints of worsening symptoms or even occasional reports of improvement or absence of headaches/neck pain, the doctor rarely altered his exam findings of [Plaintiff] in any way to reflect her subjective reports. It is

> remarkable that Dr. Liebowitz did not make any
> changes to his exam findings except for those two
> occasions indicated above, which indicate either he did
> not perform a comprehensive exam at each
> appointment, or her subjective complaints were simply
> not supported by objective exam. Moreover, she was not
> noted as using a cane or other device for ambulation
> during the relevant period. In any event, his opinion is
> not supported by his own objective exams.
> Furthermore, medical expert Dr. Todorov previously
> opined that such a reduced functionality was not
> supported by Dr. Liebowitz's own treating notes.
> Accordingly, great weight is assigned to Dr. Todorov
> because he had the opportunity to review the record in
> its entirety in forming his opinion.

Tr. at 1288 (citation omitted).

Later, in addressing Dr. Tordov's opinion specifically, the ALJ wrote:

> The opinion from Dr. Todorov regarding [the] residual
> functional capacity, is given partial weight but the
> limits for standing and walking at one time are not fully
> supported by the medical evidence of record including
> exam findings from Dr. Liebowitz.[10]

Tr. at 1290.

---

[10] Following this sentence, the ALJ observed, "the prior vocational expert did cite jobs for Dr. Tordov's residual functional capacity." Tr. at 1290 (citing "2019 hearing testimony"). Evidently this is in reference to the VE testifying in 2019 about the jobs that could be performed under various hypotheticals, including some that incorporated parts of the ME's testimony about the work-related limitations. See Tr. at 1467-80. Without more, the Court cannot rely upon the ALJ's blanket statement as a possible alternative finding on the part of the ALJ about the jobs Plaintiff can perform. Moreover, the 2019 VE testimony may be in conflict with the 2022 VE testimony that the 2019 ME's assigned standing and walking limitations preclude light work. Tr. at 1322. There are various matters at play regarding Plaintiff possibly being deemed disabled under the grid rules if limited to sedentary work, and also regarding her evident need at the relevant time to be elevating her legs. Clarifying the issues on appeal could very well affect the VE testimony regarding type of work (if any) that Plaintiff could have performed.

Plaintiff contends the ALJ erred in discounting Dr. Liebowitz and Dr. Todorov's opinions based on alleged inconsistency with Dr. Liebowitz's notes. Pl.'s Br. at 11-21. According to Plaintiff, the ALJ could not reasonably find that the notes are unsupportive of the assigned limitations of both doctors. See id. Further, Plaintiff argues the ALJ mischaracterized Dr. Todorov's testimony regarding the need to elevate her legs during the relevant time period. Id. at 20-21. Responding, Defendant argues the ALJ properly evaluated the opinion evidence and rightly disregarded Plaintiff's subjective complaints in favor of stable objective examination findings over the relevant time period for discounting both opinions. Def.'s Mem. at 5-13.

The undersigned finds the ALJ erred in addressing the opinions of Dr. Liebowitz and Dr. Todorov. The stated reason of inconsistency with treatment notes for discounting Dr. Liebowitz's opinions is not overly convincing (and indeed, with less explanation, has been rejected twice by Judges of this Court). The real problem, however, is the use of Dr. Todorov's testimony to discount Dr. Liebowitz's, only to ultimately reject Dr. Todorov's testimony about the key limitations using the same alleged inconsistency with Dr. Liebowitz's notes.

Dr. Todorov made clear in his testimony that he accepted the "fairly consistent complaints" and "physical findings" set forth in Dr. Liebowitz's notes. Tr. at 1438. He even agreed with most of the assigned limitations by Dr. Liebowitz, notwithstanding his view that Dr. Liebowitz was "a fraction too

restrictive" with "sitting, standing and walking." Tr. at 1438. The ALJ elected to accept Dr. Todorov's testimony and use it to bolster the discounting of Dr. Liebowitz, assigning Dr. Todorov's testimony "great weight . . . because he had the opportunity to review the record in its entirety in forming his opinion." Tr. at 1288. Yet, later, in support of finding Plaintiff is able to sit, stand, and walk enough to perform light work, the ALJ rejected the standing and walking limitations assigned by Dr. Todorov as "not fully supported by the medical evidence of record including exam findings by Dr. Liebowitz." Tr. at 1290.

The ALJ's reasoning here cannot withstand scrutiny. The ALJ on the one hand relied on and assigned "great weight" to Dr. Todorov's testimony that carried a clear presumption that Dr. Liebowitz's notes support most of Dr. Liebowitz's assigned limitations (except for a portion being a "fraction too restrictive"). Tr. at 1288, 1438. On the other hand, the ALJ rejected Dr. Todorov's testimony on one point that is likely outcome determinative because it means the difference between light and sedentary work. It cannot be both ways. Reversal with remand is required for further consideration of the medical opinions.

On remand, the Administration should also attempt to clarify whether and to what extent Plaintiff had a need to elevate her legs during the relevant period, as that could also be outcome determinative and Dr. Todorov's testimony on that point is open to interpretation.

20

Plaintiff seeks for the Court to award benefits instead of remanding the case for further proceedings. Pl.'s Br. at 25. Although generally cases are remanded to the Commissioner for further proceedings, it may be appropriate to remand only for an award of disability benefits when the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (citing Bowen v. Heckler, 748 F.2d 629, 635-36 (11th Cir. 1984)). In other words, "where there is no need for the ALJ to take additional evidence, to complete the sequential evaluation, and where substantial evidence exists in the record to support a finding of disability, the Court may properly reverse and remand for an award of benefits." Richardson v. Apfel, 44 F. Supp. 2d 1264, 1268 (M.D. Fla. 1998) (citing Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir. 1996)) (footnotes omitted).

Here, resolving the errors requires further consideration and explanation by the ALJ. It may also require additional evidence. Without such information, directing a disability finding based on the record would be inappropriate. Plaintiff does not even argue the evidence establishes disability without a doubt; rather, she contends the Court can award benefits if it is clear the Administration repeatedly failed to follow the Court's remand instructions. Pl.'s Br. at 25. Defendant disagrees that the Court has authority to do that. Def.'s Mem. at 21-22. Regardless of whether the Court has the authority, the

undersigned declines to order benefits. Although the procedural history of this matter is long and there have been two prior successful appeals to this Court, the Administration has taken seriously the Court's remand instructions and has attempted to follow them. The legal errors identified simply do not rise to the level of awarding benefits for an injustice or failure to follow instructions. Remand is needed for additional administrative proceedings.

### V.   Conclusion

After due consideration, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider the opinions of Drs. Liebowitz and Todorov in accordance with the applicable Regulations and authority;

(B)    If appropriate, address Plaintiff's other argument in this appeal; and

(C)   Take such other action as may be necessary to resolve this claim properly.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 21, 2024.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record